UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

GAMALY HOLLIS,
    Plaintiff,

vs.

MIAMI-DADE COUNTY, FLORIDA; a
Florida County and Political Subdivision of
the State of Florida; and JEAN DORVILIER,
Miami-Dade County Correctional Officer, in his
individual and official capacity.

    Defendants.
_____/

## COMPLAINT

**COMES NOW** plaintiff, GAMALY HOLIS (hereinafter referred to as "Plaintiff"), by and through the undersigned counsel and do hereby file this Complaint against the defendants, MIAMI-DADE COUNTY, FLORIDA; and MIAMI-DADE COUNTY CORRECTIONAL OFFICER JEAN DORVILIER, Individually (hereinafter collectively referred to as "Defendants"). In support thereof, Plaintiffs state the following:

## JURISDICTION AND VENUE

1.    This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorneys' fees.

2.    Venue is proper in Miami-Dade County, Florida, because the acts and omissions giving rise to this Complaint occurred in Miami-Dade County, Florida.

3.    Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331 [federal question] and 28 U.S.C. § 1343 [civil rights].

**PARTIES**

4.  Plaintiff, GAMALY HOLLIS ("Plaintiff"), is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

5.  Defendant, MIAMI-DADE COUNTY, FLORIDA, is a municipal corporation and governmental subdivision which is organized and existing under the laws of the State of Florida. The County owns, operates, manages, directs and controls the MIAMI-DADE COUNTY CORRECTIONS AND REHABILITATION DEPARTMENT.

6.  Defendant, OFFICER JEAN DORVILIER (hereinafter collectively referred to as "Defendant Dorvilier"), is an employee of the MIAMI-DADE COUNTY CORRECTIONS AND REHABILITATION DEPARTMENT, and thus an employee of Defendant MIAMI-DADE COUNTY, and upon information and belief are residents of Miami-Dade County, Florida and is otherwise *sui juris*.

7.  Defendant Miami-Dade County was at all times relevant to this Complaint responsible for its employees, including the employees of Miami-Dade County Corrections and Rehabilitation Department. Miami-Dade County is charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to the Constitutions and laws of the State of Florida and of the United States of America.

8.  Miami-Dade County, and its officer, Defendant Dorvilier, are "persons" for purposes of 42 U.S.C. Section 1983.

9.  At all times relevant to this cause, Defendant Dorvilier acted in conformance with policy pertaining to, among other things, investigation, arrests, and use of force, as set by Miami-Dade

County, as well as acting within the course and scope of their employment. At all times, Defendants acted under color of law.

10. This lawsuit arises out of Defendants' violation of Plaintiff's federal constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and consequently, Plaintiff has a viable claim for damages under 42 U.S.C. § 1983. Plaintiff also has viable state law claims.

## GENERAL ALLEGATIONS

11. On November 1, 2017, Plaintiff was unlawfully battered by Defendant Dorvilier.

12. On that day, Plaintiff, appeared before Judge Milton Hirsch in Courtroom #2-5 at approximately 9:00 a.m.

13. During the court appearance, Judge Hirsch offered for Plaintiff to enter a program.

14. Plaintiff refused to enter the program.

15. Upon Plaintiff's refusal, Judge Hirsch sentenced her and placed her in custody.

16. Plaintiff was escorted out of the courtroom by two Miami-Dade Police Officers.

17. Plaintiff's personal property was processed and she was placed into a holding cell to await Miami-Dade Corrections and Rehabilitation Department Officers.

18. Plaintiff asked the Miami-Dade Police Officer what time the correctional officers would be arriving.

19. The police officer stated the correctional officers were expected to arrive at 11:00 a.m.

20. Defendant Dorvilier and another Corrections Officer, Officer Anesta Hamilton, arrived at approximately 1:00 or 1:30 p.m.

21. Upon Defendant Dorvilier's arrival, Plaintiff stated, "It's about time! What took you so long?"

22. Defendant Dorvilier replied that he "can see why you are in jail."

23. Plaintiff asked Defendant Dorvilier if she could have some water from her water bottle.

24. Defendant Dorvilier refused her request for water.

25. Defendant Dorvilier took three male arrestees, also awaiting transport, out of their holding cell.

26. Officer Hamilton escorted the three male arrestees to the hallway.

27. Defendant Dorvilier brought Plaintiff out of her holding cell.

28. Plaintiff again requested water.

29. Defendant Dorvilier denied the request.

30. Plaintiff replied to the refusal by stating, "I never leave here until you give me water."

31. Defendant Dorvilier threw Plaintiff's water in the trash can.

32. Defendant Dorvilier attempted to pull Plaintiff while putting handcuffs on her.

33. Plaintiff did not willfully move.

34. Defendant Dorvilier punched Plaintiff in the face with a closed fist approximately 3 or 4 times consecutively.

35. Plaintiff fell to the ground.

36. When Plaintiff was able to get back on her feet, Defendant Dorvilier struck her again.

37. As a result of being punched in the face multiple times, Plaintiff spit at Defendant Dorvilier.

38. Officer Hamilton heard Defendant Dorvilier say, "The bitch spit on me" and that Defendant Dorvilier had punched the Plaintiff.

39. Officer Hamilton re-entered the holding cell area with Defendant Dorvilier and Plaintiff.

40. Officer Hamilton did not witness the incident, spit, or punch; Officer Hamilton just heard Defendant's Dorvilier's statement that Plaintiff had spit on him and his admission he punched the Plaintiff.

41. Defendant Dorvilier escorted Plaintiff from the holding cell area.

42. There is no surveillance footage depicting the incident between Plaintiff and Defendant Dorvilier.

43. There were no witnesses to the incident between Plaintiff and Defendant Dorvilier.

44. At all times relevant to this incident, Plaintiff was unarmed and handcuffed, posing no threat of immediate harm or death to Defendant Dorvilier.

**COUNT I: DEPRIVATION OF CIVIL RIGHTS BY EXCESSIVE USE OF FORCE IN VIOLATION OF 42 U.S.C. SECTION 1983 AGAINST ALL DEFENDANTS**

45. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 44 above.

46. Plaintiff posed no risk of harm to Defendant Dorvilier or Officer Hamilton.

47. Plaintiff was unarmed and locked in a holding cell.

48. Defendant Dorvilier provided no verbal commands to Plaintiff.

49. Defendant Dorvilier physically pulled on Plaintiff while restraining her with handcuffs.

50. As Plaintiff stood firmly to from where she was standing, Defendant Dorvilier repeatedly punched Plaintiff in the face with a closed fist, causing Plaintiff to fall to the ground. Upon her standing back up, Defendant Dorvilier again punched her in the face with a closed fist.

51. Plaintiff was unarmed, restrained by handcuffs, and Defendant Dorvilier had not given her any commands that she disobeyed.

52. As such, the battery of Plaintiff was unjustified, constituted an unreasonable and excessive use of force, and demonstrated deliberate indifference to her constitutional civil rights.

53. Defendant Dorvilier, while acting under color of law as authorized officers and agents of Miami-Dade County and the Miami-Dade Corrections and Rehabilitation Department, and while attempting to transport Plaintiff in purported furtherance of his official duty, caused a constitutional deprivation of the rights of Plaintiff, under the Eighth and Fourteenth Amendments to the United States Constitution and the comparable provisions of the Florida Constitution.

54. The actions alleged in this complaint directly and proximately resulted in injury to Plaintiff.

55. The deprivation of Plaintiff's constitutional rights was proximately and substantially caused by Miami-Dade County and the Miami-Dade County Corrections and Rehabilitation Department by a:

   a. Deliberate indifference in having a policy and/or custom and practice that directs law enforcement officers in the use of force absent the required existence of objective facts to support such action, and/or
   b. Deliberate indifference in having a policy and/or custom and practice of failing to discipline law enforcement officers who use force improperly and who unreasonably assault and batter persons resulting in implicit approval of such actions, and/or
   c. Deliberate indifference in failing to properly train law enforcement officers in the proper and legal use of force and sanctioning improper use of force, and/or
   d. Failing to appropriately, train, supervise, discipline, and otherwise manage law enforcement officers in the safe and professional methods of inmate transport between governmental agencies and use of force.

57. Further, Defendant Miami-Dade County has an unofficial policy or custom of conducting insufficient investigations calculated to exonerate its officers when its officers are accused of using excessive force during encounters with civilians.

58. Pursuant to this unofficial policy or custom, despite there being thousands of excessive force complaints lodged against its officers, not a single Miami-Dade County officer has been suspended without pay, arrested, or fired except in cases where the excessive force is caught on tape and is so patently obvious that no possible defense can be raised.

59. In accordance with this policy, Miami-Dade County also has no system in place to supervise its officers' activities to make sure that evidence incriminating its officers during excessive use of force incidents can be collected and preserved.

60. Because of this, the only times in recent history that any of the Defendant Miami-Dade County officers have been suspended without pay, arrested, or fired have been times when civilians capture the incident on cell-phone video and release that tape to the media.

61. Defendant Miami-Dade County's officer protectionist custom is so widespread that at least on one occasion an officer has been captured on tape punching civilians without any justification, and the officer has been allowed to retain his pay and has not been arrested.

62. Defendant Miami-Dade County implements this officer protectionist policy in two ways: 1) by not prosecuting, reprimanding, or firing officers who use excessive force unless there is video tape evidence of the excessive force that is conclusive beyond all doubt, and 2) creating an environment among its officers that discourages the officers from speaking out when they witness fellow officers engaging in excessive use of force.

63. Pursuant to Defendant Miami-Dade County's unofficial custom, even when the use of force is indefensible and readily apparent from video evidence, officers are routinely allowed to remain on the job, arrest free, and without repercussions for months at a time.

64. As a result of this policy officers who routinely use excessive force on civilians they encounter move up in the ranks in the Miami-Dade Police Department.

65. Similarly, the County implements this policy by conducting one-sided investigations into use of force incidents where the word of the officers automatically carries more weight than the words of the civilian witnesses.

66. Furthermore, instead of arresting and prosecuting its officers based on the standard of probable cause, the standard by which every arrest is measured in the United States, Miami Dade County has instituted an unofficial policy where officers are not to be arrested unless there is evidence beyond all shadow of a doubt.

67. Under this policy eyewitness testimony is not enough to sustain findings during internal affair investigations, let alone arrest or discipline its officers.

68. As such, none of the Miami-Dade County employees interviewed during the Internal Affairs investigation witnessed the incident between Defendant Dorvilier and Plaintiff, and in fact some of their statements contradict each other and the statements made by Defendant Dorvilier and Plaintiff.

69. Yet, Plaintiff's statement and evidence were dismissed in favor of finding Defendant Dorvilier's use of force justified.

70. In a County where people are routinely prosecuted at the state level for charges ranging from misdemeanors to homicide based on the testimony of a single eyewitness, this policy is an outlier that serves to incentivize the County's officers to commit acts of violence against civilians.

71. The County's policy has the effect of causing officers to feel empowered to use excessive force against the civilians that they encounter in their day-to-day activities.

72. The effect of the County's custom of protecting officers who use excessive force can also be gleaned from the suspensions and prosecutions in recent history.

73. Miami Dade County Mayor Carlos Gimenez has gone as far as vetoing the Civilian Independent Review Panel in February of 2018, a panel that is tasked with conducting reviews of the Miami Dade Police Department and its officers' use of force incidents.

74. To date, not a single one of the officers who have stood by and failed to report while another officer uses excessive force has been reprimanded, fired, or prosecuted for failing to report the illegal actions of his fellow officers.

75. Nor has Defendant Dorvilier been reprimanded or disciplined in any way for his failure to: notify his immediate supervisor regarding the incident with Plaintiff, generate an incident report prior to the conclusion of his shift, obtain subject statements from both the Plaintiff and witness statements from the male arrestees who were present in the holding cell. Nor has Defendant Dorvilier faced any disciplinary measures regarding his lack of professionalism in his profane statements referring to the Plaintiff.

76. These actions not only ratify the officers' illegal behavior, but also encourages and contributes to officers' excessive use of force on civilians.

77. As a result of the County's unofficial policy of protecting officers who use excessive force, Defendant Dorvilier felt encouraged and compelled to violate Plaintiff's constitutional rights by using excessive force against her.

78. As a direct result of the grossly negligent misconduct of Defendants as set out in this Complaint and associated deliberate indifference, Plaintiff was injured, and is entitled to recover

damages flowing from the deprivations of Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution and Federal Law.

79. Plaintiff is entitled to attorney's fees expended in this litigation pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Plaintiff demands judgment and compensatory and punitive damages against Defendants, and in addition demands attorney's fees and costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demands trial by jury on all issues so triable.

## COUNT II: BATTERY UNDER FLORIDA STATE LAW
## AGAINST DEFENDANT DORVILIER

80. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 79 above.

81. Defendant Dorvilier offensively touched Plaintiff by physically pulling her.

82. Defendant Dorvilier offensively touched Plaintiff by repeatedly punching her in the face with a closed fist.

83. At no time did Plaintiff permit or consent to being touched in such a manner.

84. At no time did Defendant Dorvilier give Plaintiff a command which she refused to follow, which would have warranted the offensive touching.

85. Defendant Dorvilier's offensive touching exceeded the scope of physical contact warranted to place handcuffs on Plaintiff and escort her to be transported.

86. As a direct result of Defendant Dorvilier's battery of Plaintiff, Plaintiff was injured, and is entitled to recover damages.

WHEREFORE, Plaintiff demands judgment and compensatory damages against Defendant Dorvilier, and in addition demands trial by jury on all issues so triable.

**COUNT III: NEGLIGENT FAILURE TO TRAIN AND SUPERVISE UNDER 42 U.S.C. SECTION 1983 AGAINST DEFENDANT MIAMI-DADE COUNTY**

87. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 86 above.

88. Pursuant to §768.28(6), Florida Statutes, Plaintiff presented this claim in writing to Miami-Dade County and the Miami-Dade Security and Internal Affairs Bureau. The Security and Internal Affairs Bureau conducted an investigation within the prescribed time limit and denied Plaintiff's claim.

89. All conditions precedent to filing this action have been met by Plaintiff.

90. On November 1, 2017, Defendant Dorvilier was acting within the course and scope of their employment as Miami-Dade County correctional officers.

91. Because of the failure of Miami-Dade County and the Miami-Dade Corrections and Rehabilitation Department to properly train and supervise police officers in the use of force, Defendant Dorvilier breached the duties owed to Plaintiff, conducting himself in a careless and negligent manner under circumstances in which a reasonable law enforcement officer would not have believed Plaintiff posed an immediate threat of death or serious bodily harm to Defendant Dorvilier or to anyone else.

92. Defendant Dorvilier breached the duties owed to Plaintiff when he failed to adhere to accepted law enforcement standards and practices for restraining and transporting subjects.

93. Defendant Dorvilier used an excessive amount of force in assaulting Plaintiff repeatedly without cause and in a reckless and negligent fashion.

94. Further, Defendant Miami-Dade County failed to properly train and supervise Defendant Dorvilier.

95. Defendant Miami-Dade County breached its duties of reasonable care in the following ways:

   a. By failing to properly train, instruct and manage its officers with respect to the use of force, and/or
   b. By negligently and carelessly failing to supervise its agents and officers with respect to the use of force, and/or
   c. By negligently and carelessly failing to otherwise educate, inform, train, instruct and assess the officers involved with regards to the proper techniques for detaining and transporting subjects, and other police techniques and methods, and/or
   d. By otherwise failing to exercise appropriate supervision and control over the officers involved such that but for such negligent oversight, the assault would not have occurred, and/or
   e. By carelessly and negligently failing to appropriately discipline its officers for past infractions, and/or
   f. By negligently and carelessly failing to provide available resources, back-up, and support for its officers in the field such that those officers resorted to the use of unnecessary and excessive force.

96. Defendant Miami-Dade County failed to properly supervise these officers by providing supervisors who would rubber-stamp any use of force reports made regardless of whether the force was excessive or not.

97. Defendant Miami-Dade County has an unofficial policy or custom of conducting insufficient investigations calculated to exonerate its officers when its officers are accused of using excessive force during encounters with civilians.

98. Miami Dade County Mayor Carlos Gimenez has gone as far as vetoing the Civilian Independent Review Panel in February of 2018, a panel that is tasked with conducting reviews of the Miami Dade Police Department and its officers' use of force incidents.

99. These actions not only ratify the officers' illegal behavior, but also encourages and contributes to officers' excessive use of force on civilians.

100. Defendant, Miami-Dade County, owed Plaintiff, as well as all residents of Miami-Dade County, a duty of care to hire and retain and supervise competent, law abiding officers, as well as to enact policies that ensure that officers do not use excessive force against civilians.

101. Defendant, Miami-Dade County, breached its duty of care to Plaintiff by hiring and retaining, and improperly supervising Defendant Dorvilier.

102. As a proximate and direct result of the negligence of Defendant Miami-Dade County, Plaintiff suffered severe mental and emotional distress, and bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of the capacity for the enjoyment of life, the expense of medical care and treatment, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future.

WHEREFORE, Plaintiff demands judgment for compensatory damages and court costs against Defendant Miami-Dade County, pursuant to 42 U.S.C. Sections 1983 and 1988 and requests trial by jury on all issues so triable.

## COUNT IV: VICARIOUS LIABILITY

103. For every count, the Plaintiff asserts vicarious liability against Defendants Miami-Dade County and Miami-Dade Police Department for all actions undertaken by the individual Defendants, who engaged in the described conduct while acting in the course and scope of employment for the institutional defendants or as their agents, and carried out the policies, customs, practices, and procedures of the institutional defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF, GAMALY HOLLIS, demands a trial by jury, and judgment against the DEFENDANTS, MIAMI-DADE COUNTY, and MIAMI-DADE COUNTY CORRECTIONS OFFICER JEAN DORVILIER, in his individual and official capacity for special damages, damages for past, present, and future medical expenses, compensatory damages, exemplary and punitive damages, pain and suffering, and impairment of future earning capacity, together with attorney's fees and the costs of this suit and such other relief as the court may deem just and proper.

Dated this 7th day of May 2020.

                                                                                  Respectfully submitted,

                                                                                   LETT LAW, PLLC
*Attorney for the Plaintiff*
6303 Blue Lagoon Drive
Suite 400
Miami, Florida 33126
Phone: (305)-912-5388
Email: alett@lettlawfirm.com
/s/ Ariel Lett
Ariel Lett, Esq.
Florida Bar No. 115513